Good morning. May it please the Court, Philip Smith on behalf of the petitioner Mr. Ali Ahmed Fakhry. Your Honor, I'd like to reserve one minute for rebuttal. Mr. Fakhry is from the Casamance region of Senegal, and he is a member of the Casamance Independence Group, MFDC. He applied for asylum based on his fear of persecution from the Senegalese government because of his political opinion and his membership in MFDC. The immigration judge determined that he was a credible witness, and the immigration judge found that he may have a well-founded fear of persecution in Casamance, and he also found that he may be arrested at the airport in Dakar if he were to return to Senegal. However, he denied his return. He did not qualify for an exception to the one-year filing deadline for asylum, and that two, and the alternative, that internal relocation was a safe and reasonable option in his situation. Can you show me where he found that he may be arrested at the airport? That was under his, in his decision under his analysis of the torture convention. I know, but do you know where that is? It's page, I'm sorry, page 105 of the administrative record. Shall I go ahead, Your Honor? Go ahead. I don't see it there, but go ahead. And, well, it's our position that both of these determinations, the change, the finding that he didn't qualify for a changed circumstance exception to the one-year filing deadline, and his finding on internal relocation were errors of law because the immigration judge did not follow the established legal framework for analyzing these two issues. And so, and first, if I look at the changed circumstances exception, in the regulation, it's in the statute, there are two exceptions to the one-year filing deadline. One, for extraordinary circumstances where there is, which explains the reason for the failure to file within one year of the individual's eligibility for asylum. And in the regulations states that the, and the changed circumstance could be changes in country conditions or changes in the individual's personal situation. And your argument is that the country underwent changes and that he always intended to apply for asylum, but didn't feel it was necessary, but when country conditions changed, then he decided he needed to come forward. Well, he was afraid when he first arrived here, that's correct. And analytically, that failure to come forward would be a reason to find that he did not qualify for the extraordinary circumstances exception, because that is linked to his reasons for not applying. But for the changed circumstances, his reason for not applying is not a required element to qualify for that exception. The question is, has there been a changed circumstance that materially affects his eligibility for asylum? And our argument is, both it was the changes that were going on in Senegal, and it was the discovery by the Senegalese military that he is a member of MFDC, that would, that materially affected his eligibility for asylum. And then the second element, the regulation requires that he then apply within a reasonable period of time, given this changed circumstance. Well, on the second point, it seems to me that you quite possibly have a problem, although that isn't what the IJ went off on. He didn't apply particularly promptly after the changes. I'm sorry? He did not apply particularly promptly after the changes, did he? Well, that actually is a question that was not reached by the immigration judge. I understand that. You might be entitled to a remand on that question. Well, he applied within a few, approximately, all out fighting began, and refugees fled in the summer of 2002. He applied in December of 2002. So we would argue that that is within a reasonable period of time. It was approximately five months after the. But the, it's a strange business, but the change in 2002 was sort of, it seems, kind of back to where the situation was at the time he left. In other words, there was a period in the middle that was better. That's correct. But was it changed from the time he actually came to begin, from the one-year time? At the time his one-year ran out, was the situation in the peace situation or in the war situation? Well, it was certainly in flux. At the time that it ran out, a new government had come to power in Senegal. They had not signed the peace agreement yet. He learned the following year that the records had been captured by the Senegalese military that would tell him that they knew he was a member of MFDC. So there really was a two-year period of time that the circumstances were changing dramatically. And so the question. By the time he found out that they knew who he was, he probably, it would seem that that wasn't a reasonable time, because that was a substantial period of time before he actually filed a name. The time that he found out they knew that he was, was at almost the same time is when this, the peace accord was signed. So on the one hand, they find out who he is, on the other hand, it's getting better. So the two circumstances didn't coalesce until the summer of 2002 is what you're saying. That's correct. That's correct. And then, if I, in terms of the internal relocation issue. Let me go back to this sequence. When he came here, his, his claim for asylum was as good as it is now. Is that not true? Except that now they know he's a member of MFDC. And when he came here, they didn't know it. All right. All right. And how long did those conditions exist before the peace accord was signed? He says from the time he arrived until the peace accord was signed. Approximately a year and a half. So during that entire year and a half, the conditions essentially were, were the same as they were when he left. That's correct. And the only difference that occurred in connection with all of this is that now they knew by reason of having captured or examined, or he fears they have, gotten the records, right? That's correct. Of his membership. Then how long, oh, okay. Then how long was it before, or between the time of the signing of the accords and the time of the new violence? New, but there was approximately a year of on again, off again, cease fires. Things seemed to get better. They seemed to get worse. And then it was about a year and a half, it was the summer of 2002, is when there was all out fighting and there was reports of refugees fleeing the area. So really what we have to focus on is whether the fear that he has, without any actual evidence that it's the case, that they now may have his record of membership, is the only real change in the merits of his claim of refugee status, is it not? From before he got here until now, certainly his testimony, which was accepted, that the government has proof that he's a member of MFDC, we would say would be the most outstanding difference, if you will, in his claim, which puts him at more risk now than when he first arrived. And that discovery, just to clarify the sequence again, the records were discovered at the early part of this one and a half year interval when the peace accord had been signed before it broke apart? He found out in approximately, the record shows he found out in early 2001. And he filed his application in the end of December. As far as how he applied then, presumably could have had a problem because they say essentially there were changed country conditions, there's no longer a problem. That would have been the counter, that's correct. Well now there's a new peace accord and so that would be the argument. So finally, as I said before, it was in the summer of 2002 that both conditions existed. That is correct, Your Honor, yes. But your ultimate legal position, as I understand it, is really that any linkage between his motives and the changed circumstances is inappropriate, i.e. we just should look objectively at the changed circumstances as to whether they've changed and not worry about whether he had an intent to apply for asylum at some earlier point. That's correct. I mean, that's the first step. And then the second step would be did he apply within a reasonable period of time? And the immigration judge, they never reached that step. And so that should be remanded. That would be our position. Okay. You're over time, you're going up now. I think I stopped you, however, you wanted to say a word. Well, I'll give him time on rebuttal. You can have a minute on rebuttal. Okay, thank you. You wanted to talk about the relocation. We've read the briefs, but that's okay, I'll still give you a minute. Thank you, Judge. Yeah. May it please the Court, Kelly Zusman, appearing again on behalf of the United States. I wanted to first answer Judge Berzon's question, because it was a question I had when I read the Petitioner's brief about where was it that the IJ found that he would be arrested at the airport at Dakar? And the fact is, it isn't there. Well, it actually is there. He does say he might have been arrested. And the reason that it wasn't good enough, because there had to be a clear probability. But on asylum, it might have been good enough. Well, on the asylum, which is addressed at ER 172, what he says is, I'm satisfied that it's not unreasonable to expect a respondent could go to Dakar and remain there and remain free of any of the indicated problems that he has. Under the CAT claim, what he's doing here at the top of ER 175, he says more significantly, actually, is his claim that he would be arrested upon return, and he might be. Then the IJ goes on to say, I do not find that the background information supports that he doesn't have any more of a claim than anyone else. So just to clarify, that was the point that was made. I don't believe that's a conclusion that the IJ made, that he would, in fact, be arrested if he was returned to Dakar. On the asylum claim, that is time barred. I think there's substantial evidence in the record to support the IJ's conclusion. Mr. Fakhry arrived in this country in May of 1999. He did not file his application for asylum until December of 2002, after receiving a notice to appear. Well, let's suppose that he didn't, and he did so because he just blew it off or whatever, but then there's this outbreak of fighting, a failed peace accord, and now he's on a list, which he wasn't before, and they know about it. And it would be, let's say, it's not disputed that if he were to go back, he could very well be targeted because now he's a known member of this group that's in disfavor. Why doesn't that come within the exception for change country conditions that says, whatever may have been the case before, he has made a case that things in Senegal are now a lot worse, much worse than they were before, and it's really taken a bad turn for the worse. So why wouldn't that be the proper way to evaluate whether there are changed country conditions that justify the exception? I don't believe he's made a record that the conditions in the country were substantially worse in 2002. I'm asking you to assume that I understand. I'm just trying to understand what your argument is based on. The I.J. seemed to think it was because he always planned to apply for asylum, and so it doesn't make any difference what's happened in the country in terms of increased adverse circumstances. The clock started running on him from the beginning. So that's what I'm trying to get clear. If I understand your question, Your Honor, as I understand it, first off, there's nothing in the record to support the assertion that he delayed in filing. I'm asking you, I'm asking. Let's suppose, hypothetically, that we accept that he didn't move adequately. I mean, he could have taken his chances, gone in with the things going on in Senegal as they were, but the chances of his getting asylum under those conditions were, you know, zero to five percent. So he just didn't do it. Then all of a sudden, the conditions go from a point where he's an anonymous person who would have to come in and argue a theoretical risk. Now he's got information that says this Senegal is really going downhill. They've tried, and the peace accord has failed, so we know that there's not, that the peace accord that was helpful isn't going to work. And they got my records. They now know that I'm on this, and they will target me when I go back. Let's suppose the IJ agrees with the latter point. You're saying he has foreclosed, that the time has run absolutely, because even though the conditions have changed and his personal circumstances have changed, he's lost the opportunity forever. That's your reading of the statute. Well, if I may clarify. The regulation, yes. I think if you assume that the seizure of the membership list constitutes a significant change country condition, then I think you would be correct. It would be an error. But I don't believe there's any record, any evidence in the record to support that that fact standing alone constitutes a significant change country condition. There's nothing in the record to indicate that the Senegalese army has used that list to then go after individuals who are on it. In fact, Mr. Fakhri's younger brother was also a member of the FDC who relocated to Dakar, and there's no evidence in this record that he has been targeted, singled, pulled out. So it's a fact that's in the record that that list was taken, but there's no evidence suggesting that that is a fact of significance to what you're talking about. But we are trying to understand, at least I think Judge Fisher's questions go to, your sort of legal theory. Is your legal theory that change, you look at change circumstances objectively, or you look at them in a subjective way in terms of whether the individual's determination to file asylum or not to file for asylum was based on those conditions? In other words, here the I.J. was most concerned about the fact that this gentleman intended to apply for asylum all along. Well, suppose he did. Suppose he was stupid, and he didn't know, or he came from the beginning and he intended to just hide out. But when all this happens, would that matter? I think in that scenario it would, but my It would matter. In other words, the fact that he, so his subjective intent is somehow connected to the change circumstances provision, that's what I'm trying to understand. I think what the I.J. did here was he said first subjectively there's no explanation for this. He also looked at the objective factors and determined that there were no change country conditions between 99 and 2002 when he ultimately applied. He claimed things were bad for him in Senegal, and he feared persecution in 1999. That same condition existed in 2002. What he attempted to do before the I.J. was argue that the peace accords in March of 2001 somehow excused his delay. But for example, it is certainly true that in making asylum decisions, the board looks to the question of for somebody who wasn't persecuted themselves particularly, whether there's any reason to think they would be singled out. So if he was making a strategic decision, he might well say, well, look, I can file for asylum, but I'm going to lose because there's no way they're going to say there's no reason they're going to pick you out. Then the list shows up. Whatever you think of the list or don't think of the list, it is a change, and it could affect the outcome of an asylum case. So he said, ah, now there's a change which now makes sense for me to apply for asylum. If there is a change, there was some change, whether it matters or not, why don't we simply look at that change on its own hook and forget about the question of whether he intended to apply for asylum originally or didn't intend to apply for asylum originally. OK, well, if the change isn't a change in country conditions, if it's not a significant change, then I don't think it should affect the legal analysis at all. That's the whole question, isn't it? The whole question, the premise, I think, of both what we're trying to get at is if there is a change, country condition, if, if the IJ looks at it, or if we look at it objectively and we think the IJ got it wrong, then it shouldn't matter whether or not he had a subjective intent to file for asylum from day one. And on that I agree, absolutely. OK, that's what we're trying to get at. I apologize for taking so long. That's all right. All right, so you agree. Did the IJ agree? The IJ looked at both the facts, it looked at the country conditions, and determined that there was no change in country conditions that would have affected his ability to seek asylum. Well, he also looked at the ability of him to relocate. Would you address that issue? And that comes up in examining the fear of future persecution. The IJ, in a two-step process, determined that there was no evidence of past persecution, and then went on to conclude that there was no fear, no credible fear, of future persecution because he had successfully relocated to Dakar. Two years. He moved there in 97. His wife, four children, and father still live there. No problems. Who had the burden to prove that relocation would work? If he establishes past persecution, then the burden of establishing relocation shifts to the United States. But doesn't it also shift if they're alleging that it's government-sponsored persecution? That's correct. And isn't that what he was alleging? That is correct. And so who did the IJ put the burden on? I don't know that that's clear from the record. I think either way you look at it, there was a preponderance of the evidence in the record that he had successfully relocated. And all of the State Department reports show that the violence was really confined to the Casamance region. Well, now, on the one-year issue, if I understand this petitioner's position, it is that the government intended, from the time of his arrival and all along, to seek asylum. That's correct. And based on that fact alone, and not without regard to what may have been changes, the fact that he intended put him into the one-year time limitation. And that's the end of it. Didn't go at all to the issues of whether or not there had been changes. Well, I think what we have here are really two issues. The factual issue, which is one that is under this Court's decision in Ramadan, is not subject to judicial review, was that, in fact, he did intend to seek asylum from the first day on. So there was no excuse for the untimely filing. However, Mr. Fakhry did, in fact, raise an argument that there were changed country conditions that should excuse his untimely filing. Yes. And on that point, the IJ properly concluded on the evidence in the record before him that there were no changed country conditions that would excuse that late filing. He waited to file until after the notice to appear. Well, supposing that the IJ had found that there were changed conditions, you're telling us that on this record we could conclude that the intention was irrelevant. As I understand, this Court's jurisprudence on changed country conditions, that's accurate. But it's not our holdings. I'm asking whether or not this record supports an assertion that this IJ determined that there were no changed country conditions, and would not that make the determination on intention irrelevant? Wouldn't matter what his intentions were. If there were no changed circumstances after a year, he loses, right? I think the intentions come to play where he's trying to establish exceptional circumstances. But this is what the IJ said. He said, while certainly the country conditions have been changing, there was never such a complete change, even with the new government, that at least affected him so that he decided to withdraw interest or make attempts to possibly go back and then stop again because something new had happened. That wasn't the nature of the testimony, and therefore he finds that the one-year bar applies, which I read as saying that it was because he intended from the beginning to apply for asylum and the circumstances did not make him subjectively change his mind. And that's the legal standard that applies here. That's the question. Well, and I think what the IJ's decision does is says both. He never intended. He didn't say both. He said exactly what I just said. That was his discussion of the changed country conditions, not the exceptional circumstances. And there's also no evidence of materially changed country conditions, which would excuse delayed filing. Well, but he didn't say that. He said that there certainly the country conditions have been changing, but there wasn't such a complete change that affected him so that he decided to withdraw interest. That's what he decided. He decided on a subjective standard. I think we'll have to parse the record. You're over time. But thank you for your argument. Thank you, Your Honor. And we'll hear briefly from the petitioner. Thank you, Your Honor. Just two quick points. One, I would say under Ramadan, this is a legal question and the court, you know, the standard. We understand that. On the internal relocation issue, it's clear that the burden of proof should have been placed on the government. The immigration judge, it's certainly not clear that he did place the burden of proof on the government. He cites an old BIA case for his authority, which did require countrywide persecution, which is not the law in this circuit. And when you even go to the record, the time period when he was in Dakar, he kept hidden his membership in MFDC. They didn't know he was a member of MFDC. And so we don't he wasn't safe there. That's all. Thank you, Your Honor. All right. Did you have any? No. All right. Thank you both very much. We appreciate the argument. And the case argued is submitted.
judges: Leavy, Fisher, Berzon